ORIGINAL

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

FILED

United States of America
v.
YURI LAMBERT,
JAMES EDMONDS,
VICTORIA VANLAANEN, and
OSHAN COOK

*Defendant(s)*

)
)
)
)
)
)

Case No.  CR

APR 2 3 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

BZ

**3 10 70336**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ April 22, 2010 _____ in the county of _____ Alameda _____ in the

___ Northern ___ District of ____ California ____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 846 and 841: | Distribution and Possession with Intent to Distribute 3,4-methylenedioxymethamphetamine ("MDMA"); and Conspiracy to Do the Same |

This criminal complaint is based on these facts:

See Attachment A

☑ Continued on the attached sheet.

Approved as to Form: _____
AUSA NICOLE M. KIM

_____
*Complainant's signature*

____ Jim J. Bush, Special Agent DEA ____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 04/23/2010 _____

_____
*Judge's signature*

City and state: _____ San Francisco, California _____

Hon. Bernard Zimmerman, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### AFFIDAVIT OF DEA SPECIAL AGENT JIM BUSH

1.     I am an investigative or law enforcement officer of the United States as defined in Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2.     I respectfully submit this Affidavit in support of a Criminal Complaint charging Yuri LAMBERT, James EDMONDS, Victoria VANLAANEN and OShan COOK with distribution and possession with intent to distribute a controlled substance, specifically 3,4-methylenedioxymethamphetamine (hereafter "MDMA"), in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C); and conspiracy to do the same, in violation of Title 21, United States Code, Section 846.

3.     The facts stated in this Affidavit are based on my personal knowledge, on my review of reports prepared by other law enforcement officers and records prepared by others, and on conversations I have had with other law enforcement officers and witnesses involved in this investigation, including the undercover DEA agent involved in the investigation (see paragraph 7 below). I have not set forth each and every fact learned during the course of this investigation in this Affidavit. Rather, I have set forth only those facts that I believe are necessary to support the lawful arrest of the individual listed in this Affidavit.

1

## I.    AGENT BACKGROUND

4.      I have been employed full-time as a Special Agent of the DEA since September

2007. Prior to being a Special Agent, I worked as a Human Resources Specialist with the United

States Department of Homeland Security, Customs and Border Protection, for approximately

nine months, and prior to that position, I was employed with the United States Department of the

Interior, Office of Surface Mining, for approximately eight years in positions as an Employee

Relations Specialist, a Program Analyst, and a Program Specialist (Ethics).

5.      As a Special Agent of the DEA, I have received extensive training in, among other

fields, criminal law and procedure; drug detection and recognition; leadership and ethics;

interviewing techniques; and telecommunications investigations. I have training and experience

in narcotics trafficking investigations, including investigations involving MDMA and

methamphetamine. I have participated in all aspects of drug investigations, including the use of

confidential sources, cooperating witnesses, and undercover officers; physical surveillance;

electronic surveillance; search and arrest warrants; the use of court-ordered interception of wire

and electronic communications, pen registers, telephone toll analysis, and investigative

interviews; the arrests of numerous target subjects; and the analysis of seized records, physical

evidence, and recorded conversations. I have participated in the investigation of numerous

individuals relating to violations of the laws prohibiting the importation, distribution, and

possession with intent to distribute controlled substances, the manufacture of controlled

substances, and the laundering of monetary instruments. I have also participated in the

debriefing of defendants, confidential informants, and other witnesses having extensive

knowledge of the inner workings of major narcotics trafficking organizations.

2

## II. FACTS ESTABLISHING PROBABLE CAUSE

6. In early April 2010, a confidential source (the "CS")[1] informed DEA agents that a female individual the CS knew as "Victoria" told the CS that she was able to obtain powder MDMA from another individual she identified as "Yuri." According to the CS, "Victoria" could obtain the MDMA for $18,000 to $19,000 per pound. Through public and law enforcement database checks and information obtained from the CS, law enforcement identified "Victoria" as VANLAANEN.

7. On April 21, 2010, the CS and an undercover DEA agent (the "UC") met with VANLAANEN and drove from San Francisco to Oakland, California to meet with "Yuri." During this drive, VANLAANEN made a telephone call to "Yuri" to confirm the meeting location in Oakland. After the call concluded, VANLAANEN told the UC that Yuri's "guy" would be at the meeting with the drugs. The UC then explained to VANLAANEN that he/she did not have the money to pay for the MDMA so he/she was not ready to complete the deal.

8. At approximately 1:00 p.m. that day, the CS, UC and VANLAANEN arrived at the meeting place in Oakland. Shortly afterwards, a male individual entered the UC's car and VANLAANEN introduced him as "Yuri." Through public and law enforcement databases and information obtained from the CS, law enforcement later positively identified "Yuri" as LAMBERT. LAMBERT indicated to the UC that his "buddy" had the drugs and that the deal

---

[1] The CS has provided information and assistance to the DEA since December 2009. The CS is working with law enforcement for monetary compensation. The CS has been convicted in the State of Oregon for a drug offense and is currently on probation. Since December 2009, the CS has provided information to the DEA that has been proven reliable.

3

was for "three pounds" (of powder MDMA) at $18,000 per pound.[2] The UC explained that he/she did not have the money and would contact VANLAANEN to set up the deal for the next day. LAMBERT then identified his "buddy" as "James."[3]

9.     The next day, on April 22, 2010, agents observed LAMBERT and EDMONDS meet with the UC and VANLAANEN in Oakland. At this meeting, the UC observed EDMONDS with the MDMA. EDMONDS, LAMBERT and VANLAANEN were arrested at the scene. The substance that EDMONDS was carrying field-tested positive for MDMA and had a gross weight of approximately 3.2 pounds.

10.     After being Mirandized, EDMONDS agreed to make a call to his narcotics supplier from his (EDMONDS') residence at 590 63rd Street, Oakland, CA. EDMONDS told agents that he (EDMONDS) was supposed to pay this supplier back with the money he believed he was going to get from the UC in the transaction described in the paragraphs above. In a call between EDMONDS and this supplier, which was made in the presence of law enforcement, EDMONDS asked the individual whether he (the individual) could "come over." Shortly after this call was made, an individual later identified as OShan COOK arrived at 590 63rd Street in Oakland, CA in a rental car, and was arrested on the scene.[4] Pursuant to a search incident to arrest, agents found approximately one pound of a substance suspected to be powder MDMA

---

[2] Based on my training and experience, including information obtained from the DEA Western Regional laboratory, I know that approximately one pound of powder MDMA can make approximately 5,000 to 10,000 MDMA tablets (depending on how much MDMA is in each tablet, which is typically 40-80 mgs).

[3] Through a public and law enforcement database search, agents identified "James" as James EDMONDS.

COOK self-identified himself. In addition, law enforcement found indicia in COOK's rental car and his backpack that had his name on them.

4

(later field-tested positive for MDMA), and several vials of liquid suspected to be lysergic acid diethylamide ("LSD") in a backpack COOK was carrying on his person.

## III.   CONCLUSION

11.   For the foregoing reasons, I respectfully submit that there is probable cause to believe that Yuri LAMBERT, James EDMONDS, Victoria VANLAANEN and OShan COOK knowingly possessed a mixture or substance containing 3,4 methylenedioxymethamphetamine (MDMA) and possessed it with the intent to deliver it to another person, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C); and conspired with others known and unknown to do the same, in violation of Title 21, United States Code, Section 846.

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

JIM J. BUSH, Special Agent
Drug Enforcement Administration

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS 23 DAY OF
April   , 2010

HON. BERNARD ZIMMERMAN
UNITED STATES MAGISTRATE JUDGE

5