DORON WEINBERG (SBN 46131)
LAW OFFICES OF DORON WEINBERG
523 Octavia Street
San Francisco, CA 9102
Telephone: (415) 431-3472
Facsimile:  (415) 552-2703
Email: doronweinberg@aol.com

Attorney for Defendant
OSHAN COOK

IN THE UNITED DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | NO.   CR-10-0376-JSW |
|---|---|---|
| Plaintiff, | ) | **DEFENDANT COOK'S REPLY TO UNITED STATES' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO MOTION TO SUPPRESS EVIDENCE** |
| vs. | ) | |
| OSHAN COOK, | ) | |
| Defendant. | ) | DATE:     TBD |
| | ) | TIME:      TBD |
| | ) | COURT:   11, 19TH Floor |
| | | JUDGE:    Hon. Jeffrey S. White |

    At the outset of its memorandum in opposition to Defendant's motion, the government invokes Magistrate Judge Zimmerman's finding of probable cause based on an affidavit submitted by DEA Agent Bush to counter Defendant's contention that his arrest was not supported by probable cause. But the government's reliance on this determination is misconceived, since a crucial part of Agent Bush's affidavit was based on facts not known prior to Defendant's arrest – the discovery of approximately one pound of suspected MDMA and several vials of liquid LSD in Defendant's backpack. In relying on the Magistrate's determination, the government is effectively asking this Court to take into consideration what was found in the search of Defendant's property to establish the validity of the search.

    It is, however, hornbook law that a search cannot be justified by its fruits. As the

Defendant Cook's Reply to United States'
Memorandum  in Opposition to Motion
to Suppress Evidence  (No. CR-S-10-0376 JSW)       1

Supreme Court has said:

> "We have had frequent occasion to point out that a search is not to be made legal by what it turns up. In law it is good or bad when it starts and does not change character from its success." *United States v. DiRe*, 332 U.S. 581, 595 (1948).

Magistrate Judge Zimmerman was not asked to determine whether probable cause existed for Defendant's arrest prior to the search of his backpack, and did not do so. That question is presented, for the first time, to this Court.

But, beyond its erroneous suggestion that Magistrate Judge Zimmerman has resolved the question, the government's submission is more confusing than it is enlightening.

Predictably, the government tries to minimize the importance of the two facts which it relied on exclusively in its previous presentation to this Court. Instead, the government claims that the agents had a "plethora" of probable cause for the arrest of Defendant. In reality, however, what the agents had was a plethora of inconsistent and contradictory facts which raised more questions than they answered. The government, as did the agents, seeks to pick and choose among the facts to find those which support probable cause, and invites the Court to do the same. This selectivity, however, is impermissible. Since "the police may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause." *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988).

With respect to Defendant's alleged delivery of the MDMA to Edmonds on the morning of April 22, 2010, sometime prior to Edmonds' sale of MDMA to undercover agents, the government appears to have retreated from its suggestion that observations made by the agents themselves provided cause to believe that Defendant had delivered drugs. Rather, the government now appears to rely on statements made by co-defendant Yuri Lambert shortly after his arrest. Lambert's statements purport to resolve the inconsistency between assertions made both by him and by Edmonds during negotiations that Edmonds had the MDMA in his possession and the agent's theory that Defendant Cook delivered the MDMA the next morning.

Defendant Cook's Reply to United States'
Memorandum in Opposition to Motion
to Suppress Evidence (No. CR-S-10-0376 JSW)     2

Lambert suggests that Edmonds did indeed have the MDMA in his possession during the negotiations, but that Cook retrieved it on the evening of April 21 and returned it on the morning of April 22.

There are three problems with the government's reliance on Lambert's assertion: first, it is not based on Lambert's knowledge, but explicitly on his "belief" about what happened. Second, it provides a scenario that is inherently improbable. Third, and most important, it is explicitly denied and contradicted by Edmonds himself, who asserted unequivocally that Defendant Cook did not deliver the MDMA on the morning of April 22, 2010, a fact which the government attempts to obscure.

With this background, the best the government can muster is the obfuscatory statement that "[g]iven the circumstances, agents had *reason to believe that it was unclear* whether the powder MDMA was returned and re-delivered." (Emphasis supplied, Supp. Memo, at p.4). By the government's reckoning, therefore, Edmonds' direct statement to the contrary "did not detract from the probable cause for Cook's arrest." (*Ibid.*).

The government is, if anything, even more cavalier in its treatment of the facts surrounding Edmonds' phone call and Defendant's subsequent arrival. As with the delivery issue, the government seeks to pick and choose among the facts, and present only those which support its theory of probable cause. Thus, the government represents that Edmonds placed two telephone calls "that were not answered and that went to voicemail." It ignores, however, the fact that the voicemail message was that of a woman named Anita, an inconvenient fact to be sure. But the implications of this fact are entirely unclear, since it does not appear that the agents made any effort to determine who "Anita" is, or whether the phone number that Edmonds dialed had anything whatever to do with Defendant Cook.

Rather, the government relies entirely on the fact that Cook called Edmonds shortly thereafter and engaged in a suggestive, but entirely vague conversation, with some elements that

Defendant Cook's Reply to United States'
Memorandum in Opposition to Motion
to Suppress Evidence  (No. CR-S-10-0376 JSW)           3

coincided and some that conflicted with the agents' theory.[1]

The agents, and the government, ignore another glaring inconsistency in the information which the agents had prior to the arrest of Defendant Cook.  As reflected in the report of Edmonds' statement (p. 95, Exhibit A to Declaration of Doron Weinberg in Support of Defendant Cook's Supplemental Memorandum), immediately after his arrest Edmonds told the agents that he "was reluctant to talk because he was afraid of what the supplier of the powder MDMA . . . would do to him and/or his loved ones."  Edmonds was apparently given some time to think the matter over, and reasserted that he "was afraid for himself and his family."  But at some point thereafter, under circumstances which the report leaves entirely unclear, Edmonds identified his supplier as "Oshan," but then stated that Oshan "was not a violent person."  (*Ibid*.).

Plainly, the agents failed to inquire of Edmonds, or undertake any other efforts to determine the truth of any of the statements made to them by Edmonds or Lambert.  But the agents knew that they were dealing with newly-arrested informants, whose statements should have been viewed with heightened skepticism.  As the Supreme Court has noted, "a person arrested in incriminating circumstances has a strong incentive to shift blame or downplay his own role in comparison with that of others, in hopes of receiving a shorter sentence and leniency in exchange for cooperation."  *Williamson v. United States*, 512 U.S. 594, 607-08 (1994).

Here, neither Lambert's nor Edmonds' statements were declarations against penal interests, inasmuch as both of them had been apprehended in the commission of a crime, and neither admitted to anything beyond what the agents plainly knew.  Indeed, both minimized their criminal involvement. The report of Edmonds' statement reveals that Edmonds claimed that this

---

[1]  The agents, and the government, attempt to bolster the significance of this phone call by suggesting that the caller, ostensibly the MDMA supplier, said that he would see Edmonds "shortly" (Supp. Memo at p.5), and Defendant Cook arrived at Edmonds' apartment shortly thereafter.  In fact, however, the government's own transcription of the telephone conversation quotes the caller as saying "OK, I'll see you then."

Defendant Cook's Reply to United States'
Memorandum in Opposition to Motion
to Suppress Evidence  (No. CR-S-10-0376 JSW)                4

was his first involvement in drug sales "on this scale." (p. 11). He further claimed that all of the MDMA found at his apartment was given to him by Defendant Cook and, most incredibly, that he was expected to turn over the entire proceeds of the sale to Cook, thus claiming that he was to derive no profit from the sale of the MDMA.

Despite these warning signals, the agents exercised no independent judgment, let alone skepticism. They simply accepted the allegations that supported probable cause to arrest Defendant Cook, and discarded those that conflicted. In doing so, the agents plainly failed to satisfy the constitutional standard that requires objective probable cause to support an arrest and search.

Defendant submits that the evidence before the Court is sufficient to establish the illegality of Defendant's arrest. However, should the Court conclude that an evidentiary hearing is necessary to determine what the agents knew, when they knew it, and why they failed to consider conflicting information within their knowledge, Defendant would request the hearing be scheduled either for December 8 or December 22, 2011.

Respectfully submitted,

LAW OFFICES OF DORON WEINBERG

Dated: November 28, 2011  /s/ Doron Weinberg
DORON WEINBERG

Attorney for Defendant
OSHAN COOK

Defendant Cook's Reply to United States'
Memorandum in Opposition to Motion
to Suppress Evidence (No. CR-S-10-0376 JSW)    5