DORON WEINBERG (SBN 46131)
LAW OFFICES OF DORON WEINBERG
523 Octavia Street
San Francisco, CA 94102
Telephone: (415) 431-3472
Facsimile: (415) 552-2703
Email: doronweinberg@aol.com

ALEXIS WILSON BRIGGS (SBN 251688)
Attorney at Law
506 Broadway
San Francisco, CA 94133
Telephone: (415) 986-5591
Facsimile: (415) 421-1331
Email: alexis@Pier5Law.com

Attorneys for Defendant
OSHAN COOK

IN THE UNITED DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR-10-0376-JSW |
| Plaintiff, | **DEFENDANT COOK'S OPPOSITION TO UNITED STATES' MOTION TO ADD TRIAL EXHIBIT AND WITNESS** |
| vs. | |
| OSHAN COOK, | DATE: TBD |
| Defendant. | TIME: TBD |
| | COURT: 11, 19th Floor |
| | JUDGE: Hon. Jeffrey S. White |

Defendant Oshan Cook opposes the government's Motion to Add Trial Exhibit and Witness on the grounds that (1) the motion is untimely and its untimeliness is not excused; (2) there is insufficient time for defendant to evaluate, investigate and prepare to meet this evidence before trial, and its introduction would therefor deny defendant's right to due process and a fair trial; and (3) the government's intended use of this evidence is highly speculative and would be more prejudicial than probative.

//

Defendant Cook's Opposition to United States'
Motion to Add Trial Exhibits and Witness
(No.: CR-10-0376-JSW)   1

## A. THE MOTION IS UNTIMELY, WITHOUT GOOD CAUSE OR EXCUSABLE NEGLECT

The facts establishing that the government's motion is untimely and must be denied are not complex:

Defendant Cook's computer was seized from his backpack on the day of his arrest, April 22, 2010. On or about May 19, 2010, the government obtained a search warrant from Magistrate Judge Spero authorizing, *inter alia*, the forensic search of the computer. A search was conducted on or before July 28, 2010, resulting in an investigative report which was provided to Defendant in discovery. This report simply describes the contents of the computer in broad categories, without any detail, and without indication that any information of relevance is contained in any category. Thereafter, on or about September 2, 2010 the computer was returned to defendant Cook, again without any indication that it contained matter of evidentiary relevance.

Under the circumstances, defendant had no notice that the contents of the computer had evidentiary significance. The only "discovery" that was provided to defendant was the report, appended as Exhibit "A" to the government's motion. There the matter remained for more than 22 months.

Indeed, during the entire process engaged in by the parties pursuant to the court's standing order regarding pretrial procedures, no mention whatever was made of the computer or its contents, and certainly not in any discussion or enumeration of trial exhibits. Pursuant to the court's order a joint exhibit list was prepared and submitted on June 18, 2012, which remained unchanged through the conclusion of the Final Pretrial Conference on July 2, 2012. It contained no reference to the computer or its contents.

On or about July 11, 2012 defendant received by mail a compact disc, which was described in an accompanying letter as containing the contents of defendant's computer. Defendant's undersigned counsel immediately contacted the government to inquire why this material was being provided at such a late date and to object to belated discovery, if any. Counsel was assured that the disc had been sent in an abundance of caution, because the government had

Defendant Cook's Opposition to United States'
Motion to Add Trial Exhibits and Witness
(No.: CR-10-0376-JSW)    2

1  realized that defendant had not previously received this material. Counsel was further assured by
2  Assistant United States Attorney Peter Axelrod that the government had itself not reviewed this
3  material and had no existing intention to introduce any of the contents in evidence, but would
4  examine the materials further and would let defense counsel know if anything of relevance was
5  discovered.

6  Thereafter, on July 12, 2012 defense counsel received a telephone call from the
7  prosecutors informing him that a review of the contents of the computer had disclosed
8  "something" that the government wished to introduce into evidence. This was described as what
9  the government believed to be "pay-owe" sheets, which defense counsel was advised could be
10 found as part of Attachment B in the computer records.

11 Defense counsel objected to the proposed use of this evidence, and the government
12 indicated that it would file an appropriate motion. That motion was filed on July 16, 2012, and
13 this opposition follows.

14 Two things are clear from this history:

15 First, the evidence now proffered by the government was not previously provided to
16 defendant Cook "in discovery". Rather, it was simply returned to him as part of his personal
17 property. The only reference to the contents of the computer in the actual discovery leaves no
18 doubt that the government did not identify any evidentiary significance in the contents.

19 Thus, this is not a circumstance in which defense counsel had been notified of the
20 intention to use documents from the computer but the government simply failed to specify or
21 identify the particular items intended. Nor was a general intent to use documents from the
22 computer expressed at any time prior to or during the meet and confer process and the creation of
23 the Exhibit List. And, indeed, even had such a generalized notice been given it would not have
24 been sufficient. See, e.g., U.S. v. Abergil, 2011 U.S. Dist. LEXIS 66104, *6 (C.D. Cal. June 13,
25 2011), citing U.S. v. Poindexter, 727 F.Supp. 1470, 1484 (D.D.C. 1989) (holding that the
26 government is required to "give the defendant some notice as to which among the thousands of
27 documents are likely to be part of the government's case-in-chief" within 30 days of the court's
28

Defendant Cook's Opposition to United States'
Motion to Add Trial Exhibits and Witness
(No.: CR-10-0376-JSW)                                3

order), <u>U.S. v. Turkish</u>, 458 F.Supp. 574, 582 (S.D.N.Y 1978), <u>U.S. v. Anderson</u>, 416 F.Supp.2nd, 110, 113 (D.D.C. 2006).

Second, there is no justification or excusable neglect for the government's failure to identify and proffer this evidence in the preceding 24 months since the forensic examination was conducted in July 2010. This much is at least implicitly conceded in the government's Motion.

Under the circumstances, there is no reason why the government should be excused from its obligations to prepare cases diligently, provide timely discovery and abide by the rules of this court.

### B. ADMISSION OF THE PROFFERED EVIDENCE AT THIS STAGE WOULD DENY DEFENDANT COOK DUE PROCESS AND A FAIR TRIAL

Should the court allow the government to produce its proffered evidence at this point - four days before the commencement of the evidentiary stage of trial - defendant Cook's rights to due process and a fair trial will be hopelessly undermined.  The evidence the government seeks to introduce is not simple: the government intends to persuade the jury that two pages of shorthand references on defendant's computer can be reliably interpreted by its expert as the language of drug trafficking.  But this proffer presents far more problems than it answers.

First, the proffered expert testimony does not meet the requirements of Federal Rule of Criminal Procedure 16 requiring the government to provide a description of its "witness's opinions, the bases and reasons for those opinions, and the witnesses's qualifications."  Simply put, based on the government's submission the defense can have no idea of how and on what basis its expert reached the opinion that the proffered evidence carries the evidentiary significance that he would ascribe to it.

Second, assuming the expert proffer is procedurally sufficient, defendant must review and analyze the evidence and the opinion in order to prepare effectively to meet and cross examine it. There is simply no time available for that task.  For example, the government's expert intends to ascribe certain meanings to certain phrases and abbreviations, but it is not clear that the expert has examined the entirety of defendant's computer to determine whether in fact defendant used those

Defendant Cook's Opposition to United States'
Motion to Add Trial Exhibits and Witness
(No.: CR-10-0376-JSW)                                      4

terms and phrases in the manner identified by the expert, or whether defendant's usage - as reflected in other entries and documents - differed from the expert's opinion. And, of course, if the expert has failed to conduct that analysis, it is incumbent upon defendant now to do so. Again, four days is not sufficient time to accomplish that task.

Third, defendant must now at least consider and explore the possibility of retaining his own expert to review the bases and validity of the government expert's anticipated opinion. Once again, this is an undertaking that cannot be accomplished in four days.

Under the circumstances, since defendant would have no realistic opportunity to challenge the proffered evidence, the government would be afforded an opportunity to present virtually unchallenged evidence that has not been subject to the adversary process, which, of course, lies at the heart of our criminal justice system.

### C. THE GOVERNMENT'S PROFFERED EVIDENCE IS MORE PREJUDICIAL THAN PROBATIVE AND SHOULD BE EXCLUDED UNDER FEDERAL RULE OF EVIDENCE 403

The government's proffer suggests an intention to speculate on the meaning of words (and abbreviations) and to extrapolate from those words a picture of defendant Cook as a drug dealer, apparently to make it appear more probable that he is the person who supplied the drugs sold by James Edmonds to the undercover agent. Reduced to its fundamentals, this is simply character evidence which, as courts have often repeated, must be excluded on the grounds of basic fairness and due process. See, Michelson v. United States, 335 U.S. 469 (1948).

But, in the context of this prosecution, the evidence is even more clearly excludable under Federal Rule of Evidence 403.

In any prosecution, the government's attempt to import meaning into ambiguous words and phrases would be questionable, but in the instant case the government's purported proof is even more contrived. The government seeks to be make evidentiary hay of the fact that defendant has on his computer entries under the general heading of "Biz" which detail what appears to be a number of debts owed and owing. But the fact is that defendant has a legitimate "Biz" or business - a well-established and well-regarded teahouse in San Francisco which is popular, serves a

Defendant Cook's Opposition to United States'
Motion to Add Trial Exhibits and Witness
(No.: CR-10-0376-JSW)            5

substantial clientele and is economically successful, and defendant Cook himself is frequently sought to organize ceremonial tea programs at public events throughout California and elsewhere. In other words, defendant has legitimate "Biz" as a result of which he has, and would legitimately record, debts and obligations.

The government's attempt to convert defendant's lists of debts and obligations from legitimate business to nefarious drug dealing is, at best, speculative and would engender - indeed require - the presentation of evidence that will pose a real danger of unfair prejudice, will confuse the issues and potentially mislead the jury and will unduly waste the time of the trier of fact.

## CONCLUSION

For the foregoing reasons defendant respectfully submits that the government's Motion to Add Trial Exhibit and Witness should be denied.

Dated: July 19, 2012          Respectfully submitted,

                              LAW OFFICES OF DORON WEINBERG


                               /s/   Doron Weinberg
                              DORON WEINBERG


                              Attorney for Defendant
                              OSHAN COOK

Defendant Cook's Opposition to United States'
Motion to Add Trial Exhibits and Witness
(No.: CR-10-0376-JSW)                     6