MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

CHINHAYI COLEMAN CADET (CABN 194542)
PETER B. AXELROD (CABN 190843)
Assistant United States Attorneys

   450 Golden Gate Ave., Box 36055
   San Francisco, California 94102
   Telephone:  (415) 436-7205
   Fax: (415) 436-7234
   E-Mail: chinhayi.cadet@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No.  CR 10-0376 JSW |
| Plaintiff, | ) | TRIAL BRIEF |
| v. | ) | Pretrial Conference |
| OSHAN COOK, | ) | Date: October 15, 2012<br>Time: 2:00 p.m. |
| Defendant. | ) | Trial Date: October 29, 2012 |

## I.  INTRODUCTION

The Government submits the following trial brief concerning controlling issues of law with respect to references to punishment, and testimony by Special Agent Kenneth Glenn.

## II. REFERENCES TO POTENTIAL PUNISHMENT OR CONSEQUENCES OF A GUILTY VERDICT ARE IMPROPER

In closing argument at the first trial, defense counsel referenced potential "consequences" of a finding of guilt. *See* Trial Transcript, 693:22-24. It is well-established that when a jury has no sentencing function, it should be admonished to "reach its verdict without regard to what sentence might be imposed." *Rogers v. United States*, 422 U.S. 35, 40 (1975). The Supreme Court reiterated this principle in *Shannon v. United States*, 512 U.S. 573, 579 (1994). The parties are prohibited from informing the jury of sentencing possibilities. Here, the defendant's counsel alluded to possible punishment in closing argument. Defense counsel stated, "you have no idea what the *consequence* of a single conviction is as opposed to four convictions." (Trial Transcript, 693:22-24, *emphasis added*). That statement was inappropriate and may have aroused the passions and sympathies of the jury by alluding to possible penalties faced by Mr. Cook. Indeed, the parties in this case spoke with the jurors after the trial, and one juror stated that although she knew that she was not supposed to consider punishment, she could not help doing so, and that she hoped that the defendant would turn his life around. Comments suggesting that the jury consider punishment are inappropriate.

The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury. The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged. The judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict. Information regarding the consequences of a verdict is therefore irrelevant to the jury's task. Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their fact-finding responsibilities, and creates a strong possibility of confusion. *See Rogers,* 422 U.S. at 40; *see also Pope v. United States*, 298 F.2d 507, 508 (5th Cir. 1962).

The defendant here faces a 10 year mandatory minimum for Count Four of the Superceding Indictment, charging possession with the intent to distribute more than 10 grams of

1  a mixture or substance containing a detectable amount of LSD, in violation of 21 U.S.C.
2  §841(a)(1). If the defendant is convicted, the Court, not the jury, has the responsibility of
3  imposing sentence. As punishment is within the purview of the Court, and not the jury, the only
4  purpose that could be served by referring to "consequences" would be to encourage jury
5  nullification. While jury nullification is available as a fact incident to the jury system, a jury does
6  not have the right to nullify criminal law, nor does a defendant have the right to argue jury
7  nullification, or admit otherwise irrelevant evidence aimed at nullification. *See Zal v. Steppe*,
8  968 F.2d 924, 930 (9th Cir. 1992) (Trott, J. concurring) ("I believe neither a defendant nor his
9  attorney has a right to present to a jury evidence that is irrelevant to a legal defense to, or an
10 element of, the crime charged. Verdicts must be based on the law and the evidence, not on jury
11 nullification as urged by either litigant."); *United States v. Kerley*, 838 F.2d 932, 938 (7th Cir.
12 1988) (jury nullification is a power, not a right); *United States v. Gorham*, 523 F.2d 1088, 1097-
13 98 (D.C. Cir. 1975) (affirming trial court's refusal to admit evidence bearing no relation to
14 charges but which might encourage "conscience verdict" of acquittal), *supplemented by* 536 F.2d
15 410. Consequently, counsel should not make references to punishment, "consequences" of a
16 guilty verdict, or similar topics in opening statement, closing argument, or in any question to a
17 witness, either on direct or cross-examination. Comments suggesting jury nullification should be
18 prohibited.
19
20 **III.   TESTIMONY BY KENNETH GLENN AS TO THE FACT OF HIS DIALING,**
21 **        AND THE IDENTITY OF THE NUMBERS HE DIALED**
22     **A.    The Fact that Agent Glenn Dialed a Telephone Number Should Be**
23         **Admissible at the Re-Trial**
24     At trial, Special Agent Kenneth Glenn testified that he dialed a telephone number at the
25 direction of James Edmonds. The fact that Agent Glenn dialed a number at the direction of
26 Edmonds is not hearsay, as Edmonds' direction is offered for its effect on Agent Glenn, in order
27 to explain Agent Glenn's conduct of dialing a number. *See United States v. Payne*, 944 F.2d
28 TRIAL BRIEF
   CR 10-0376 JSW                                      3

1458, 1472 (9th Cir. 1991).  As defense counsel first learned at trial that Agent Glenn (and not James Edmonds) was the person who dialed the telephone number, the Court struck Agent Glenn's testimony that he dialed the number.  *See* Trial Transcript, 340:25 -341:6, 344:7-9.  In striking the testimony that Agent Glenn dialed the number, the Court reasoned that the defense was not afforded the opportunity to prepare to cross examine Agent Glenn on the issue of dialing the number.  *See* Trial Transcript, 340:25 - -341:6 and 344:7-9.  As the defense is now aware of Agent Glenn's assertion that he dialed the number, his testimony that he dialed the number should be admissible at the re-trial.

### B. The Identity of Numbers that Agent Glenn Dialed Should Be Admissible at the Re-Trial

At the earlier trial, the Court struck Agent Glenn's testimony as to the identity of the numbers that were dialed, reasoning that the identity of numbers is hearsay because the agent heard the numbers from Edmonds.  *See* Trial Transcript, 341:10-12, 344:2-7.  Agent Glenn's testimony about the identity of the number Edmonds directed him to dial is not hearsay under Federal Rule of Evidence 801(c), because Edmonds' direction to Agent Glenn to dial a particular number was non-assertive verbal conduct.  Edmonds' direction of Agent Glenn to dial a particular number is an imperative and not an assertion of fact.  This verbal command does not fall within the meaning of "statement" in Rule 801(a), and cannot be hearsay because a non-assertion cannot be offered for the truth of the matter asserted.  *See U.S. v. Perez*, 658 F.2d 654, 658-659 (9th Cir. 1981); *U.S. v. Waters*, 627 F.3d 345, 358 (9th Cir. 2010).  Consequently, Agent Glenn's testimony as to the identity of the numbers Edmonds told him to dial should be admissible at the re-trial.

///
///
///
///

TRIAL BRIEF
CR 10-0376 JSW                                                4

IV. CONCLUSION

References to punishment would be improper at the re-trial, and testimony by Special Agent Kenneth Glenn regarding the fact that he dialed a number and the identity of the number are appropriate for admission at the re-trial.

DATED: October 1, 2012

Respectfully submitted,
MELINDA HAAG
United States Attorney

/s/
CHINHAYI COLEMAN CADET
PETER B. AXELROD
Assistant United States Attorneys