MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

CHINHAYI COLEMAN CADET (CABN 194542)
PETER B. AXELROD (CABN 190843)
Assistant United States Attorneys

   450 Golden Gate Ave., Box 36055
   San Francisco, California 94102
   Telephone: (415) 436-7205
   Fax: (415) 436-7234
   E-Mail: chinhayi.cadet@usdoj.gov

Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 10-0376 JSW |
|     Plaintiff, ) | |
|     v. ) | UNITED STATES' AMENDED NOTICE OF ANTICIPATED EXPERT TESTIMONY PURSUANT TO FED. R. CRIM. P. 16(a)(1)(G) |
| OSHAN COOK, ) | |
|     Defendant. ) | Trial Date: October 29, 2012 |

    Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), the United States of America hereby submits a summary of the testimony that it intends to use under Rules 702, 703, and/or 705 of the Federal Rules of Evidence during its case-in-chief at trial.

    Pursuant to Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure, the United States hereby reiterates its request for disclosure by the defendant of any testimony he intends to

///
///
///
///

1 | use under Rules 702, 703, and/or 705 of the Federal Rules of Evidence.  The United States
2 | reserves the right to supplement this notice.

4 | DATED: October 23, 2012                    Respectfully submitted,

MELINDA HAAG
United States Attorney

_____/s/_____
CHINHAYI COLEMAN CADET
PETER B. AXELROD
Assistant United States Attorneys

UNITED STATES' NOTICE OF EXPERT WITNESS
CR 10-0376 JSW                                    2

## I. Summary of Testimony of Forensic Chemist Brittany Christine Huntington

The Government intends to present the testimony of Brittany Huntington, who is employed as a Forensic Chemist by the Drug Enforcement Administration's Western Laboratory in San Francisco. She is an expert in the field of controlled substances. She is an expert with respect to the analysis, weight, and chemical composition of controlled substances, and has testified repeatedly in federal courts with respect to the same. Ms. Huntington analyzed the drug evidence in this case. She will testify generally about the science, technology and procedures for drug analysis, and about the results of her analysis in this case. We have produced her reports relating to her analysis in discovery.

### A. The Witness's Opinions:

Ms. Huntington is expected to testify that she examined, tested, analyzed, and weighed all of the narcotics at issue in this case that were provided to her. She will testify as to the methods that she used to analyze and weigh the narcotics, including what is known as infrared spectrometry (IR), gas chromatography coupled with mass spectrometry (GC-MS), and gas chromatography coupled to flame ionization detection (GC-FID). She may also testify that she prepared the lab reports in this case. She may also testify as to the methods by which the lab's balances and equipment are maintained. She will testify from her records, handwritten notes, laboratory reports and possibly, a demonstrative. She is expected to testify that she opened packages of narcotics, that she visually inspected the matter contained in each container and grouped them together based on both visual inspection and further analysis. She is expected to testify that the contents of the packages tested positive for controlled substances in the weights and types that were listed on the laboratory reports that she prepared, which have been produced. Although not part of her expert opinion, absent a stipulation as to chain of custody while the narcotics were at the DEA, Ms. Huntington may also testify as to standard operating procedures at the laboratory with respect to receipt, storage, and return/disposition of narcotics evidence.

She will testify about, *inter alia*, her qualifications as a forensic chemist, the tests she employed to test the exhibits referenced below, and the conclusions she reached based on her testing regarding the chemical composition of the exhibits.

On this last point, in summary, Ms. Huntington will testify that:

1. On or about April 28, 2010, she subjected a quantity of white powdery substance to chemical testing, which determined that the white powdery substance contained approximately 839.3 grams of 3,4-Methylenedioxymethamphetamine.  See Bates number 121 (Lab Exhibit No. 1, obtained on April 22, 2010 in connection with the buy bust operation pertaining to Edmonds, Lambert and Vanlaanen).

2. On or about May 4, 2010, she subjected a quantity of a green leafy substance to chemical testing, which determined that the green leafy substance was approximately 3554 grams of marijuana.  See Bates number 123.  (Lab Exhibit No. 2, obtained on April 22, 2010 from the search of Edmonds' home).

3. On or about May 5, 2010, she subjected a quantity of a green leafy substance to chemical testing, which determined that the green leafy substance was approximately 88.4 grams of marijuana.  See Bates number 125.  (Lab Exhibit No. 4, obtained on April 22, 2010 from the search of Edmonds' home).

4. On or about May 5, 2010, she subjected a quantity of a green leafy substance to chemical testing, which determined that the green leafy substance was approximately 87 grams of marijuana.  See Bates number 127.  (Lab Exhibit No. 4, obtained on April 22, 2010 from the search of Edmonds' home).

5. On or about April 29, 2010, she subjected a quantity of clear liquid to chemical testing, which determined that the clear liquid was approximately 21.9 grams of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD).  See Bates number 129.  (Lab Exhibit 6, obtained on April 22, 2010 from the search of Edmonds' home).

6. On or about April 28, 2010, she subjected a quantity of white powdery substance to chemical testing, which determined that the white powdery substance contained approximately 19 grams of 3,4-Methylenedioxymethamphetamine.  See Bates number 131 (Lab Exhibit No. 7, obtained on April 22, 2010 in connection with the search of Edmonds' home).

7. On or about April 28, 2010, she subjected a quantity of white powdery substance to chemical testing, which determined that the white powdery substance contained approximately

1   415.8 grams of 3,4-Methylenedioxymethamphetamine.  See Bates number 135 (Lab Exhibit No.
2   10, obtained on April 22, 2010 in connection with the search of Cook's backpack).

3         8.      On or about May 3, 2010, she subjected a quantity of clear liquid to chemical
4   testing, which determined that the clear liquid was approximately 39.3 grams of a mixture or
5   substance containing a detectable amount of lysergic acid diethylamide (LSD).  See Bates
6   number 137.  (Lab Exhibit 11, obtained on April 22, 2010 from the search of Cook's backpack).

7         9.      On or about May 5, 2010, she subjected a quantity of a green leafy substance to
8   chemical testing, which determined that the green leafy substance was approximately 2.9 grams
9   of marijuana.  See Bates number 139.  (Lab Exhibit No. 12, obtained on April 22, 2010 from the
10  search of Cook's backpack).

11  Information contained in the underlying laboratory reports and documents are
12  incorporated by reference and may be part of the testimony of Ms. Huntington.

13  **B.    The Witness's Qualifications**:

14  Ms. Huntington has been employed as a forensic chemist with the DEA since 2009.  Her
15  responsibilities include testing substances to determine their chemical composition.  Prior to her
16  employment with the DEA, she was employed from 2008 through 2009 as a Controlled
17  Substances Intern at the Sacramento District Attorney's Laboratory of Forensic Services, where
18  she conducted her thesis research of synthesizing and analyzing the hallucinogen
19  bromodragonfly.  She was employed as a Laboratory Assistant at Northeastern University from
20  2003 through 2007.   She served in 2005 as an Evidence Technician Intern at South Lake Tahoe
21  Police Department, where her main duties included handling, processing, and storing evidence,
22  as well as crime scene investigation.  She received her Bachelor of Science degree in Chemistry
23  from Northeastern University in 2007.  She then earned a Master of Science degree in Forensic
24  Science from the University of California at Davis in 2009.

25  **C.    The Bases and Reasons for the Witness's Opinions**:

26  The bases and reasons for Ms. Huntington's opinions are her training, experience, and
27  familiarity with the chemical testing procedures for controlled substances and listed chemicals.
28  She will also testify about the specific analyses performed on the items received in this case and

the results obtained therefrom.

## II. Summary of Testimony of Special Agent Karl Nichols

The Government intends to present the testimony Special Agent Karl Nichols, who has been employed as a Special Agent with the DEA since January 1992.

### A. The Witness's Opinions:

Special Agent Karl Nichols of the Drug Enforcement Administration will testify about, among other things, (1) the distribution of controlled substances, specifically, lysergic acid diethylamide (LSD) and 3,4-Methylenedioxymethamphetamine ("MDMA" or "ecstacy"); (2) the approximate dosage amounts and street price paid by users of these controlled substances; (3) the prices of bulk amounts of these controlled substances; (4) the relationship between suppliers of controlled substances and their customers, including the criteria for "fronting" drugs for sale; (5) the methods used by traffickers of these controlled substances to avoid detection by law enforcement, including but not limited to, the use of code words; and (6) the practice of using coded language by traffickers of these controlled substances.

Specifically, Agent Nichols will testify that the LSD and MDMA possessed by the defendant was possessed with the intent to distribute it to other people. His testimony and opinion will be based on the quantities of the drugs, the packaging of the drugs, the location of the drugs, the cash on defendant at the time of arrest, the lack of ingestion devices found on the defendant's person, the presence of a measuring scale at the home where the defendant had arrived at the time of his arrest, and the statements of the defendant during a recorded telephone conversation with a cooperating witness. Agent Nichols will also testify that a supplier who "fronts" drugs to a customer, *e.g.*, provides drugs to a customer without requiring payment prior to receipt of the drugs so that the customer can resell the drugs and pay the supplier from the proceeds of that sale, has a relationship of trust with that customer, which is indicative of a historical relationship. Agent Nichols is also expected to testify that the denominations of the cash taken from Mr. Cook at the time of his arrest (including several $100 bills) is indicative of drug dealing.

//

1    Agent Nichols will also will also testify about the terms used by the defendant in the
2  calendar entries found on his computer. Agent Nichols will testify about each of the code words
3  and slang terms used by the defendant in the calendar entries, including slang terms for the types
4  and quantities of LSD (including, but not limited to, the slang term "grr"), MDMA (including,
5  but not limited to, the slang term "mad dog"), MDMA tablets (including, but not limited to, the
6  slang term "bots"), GHB (including, but not limited to, the slang term "g"), an ounce (including,
7  but not limited to, the slang term "z"), and a quarter pound (including, but not limited to, the
8  slang term "qp"). Agent Nichols will also testify about general code words and slang terms used
9  to refer to the narcotics business. He is also expected to testify that certain of the calendar entries
10 on the defendant's computer are indicative of a pay owe record, e.g., records of amounts paid or
11 owed to particular individuals for narcotics.

### B.    The Witness's Qualifications:

Agent Nichols has been employed as a Special Agent with the DEA since January 1992. At the DEA, he has been a Group Supervisor from January 2010 to the present. He served on the Clandestine Laboratory Team from June 1996 through December 2003, and he served on the LSD Task Force from April 1992 through June 1996. Prior to serving as a Special Agent with the DEA, he was employed as a Forensic Chemist with the DEA Western Regional Laboratory from January 1988 through January 1992. He received a Bachelor of Science degree in Chemistry from Colorado State University in 1987.

During his time with the DEA, Agent Nichols has been involved in numerous arrests involving the possession, possession for sale, and sale of LSD and MDMA. Agent Nichols has authored and participated in the service of numerous illicit drug search warrants that have resulted in the seizure of LSD, MDMA, methamphetamine, cocaine HCL, cocaine base, marijuana and heroin. Agent Nichols has also participated in undercover buy-busts, targeting mid and high level narcotics trafficking.

Agent Nichols has utilized and directed informants during undercover narcotics buys. Agent Nichols has interviewed the users and sellers of controlled substances and discussed their use, preparation, concealment, packaging, transportation, and distribution. Agent Nichols has

1   testified as an expert in the possession, possession for sales, and sales of controlled substances,
2   including LSD and MDMA, in federal and state courts. Agent Nichols has received over 700
3   hours of training in various aspects of narcotics trafficking and enforcement, including training in
4   the possession for personal use, possession for sale, and distribution of narcotics.

        C.        **The Bases and Reasons for the Witness's Opinions**:

The bases and reasons for Agent Nichols' opinions are his training, experience, and familiarity with all aspects of the trafficking of controlled substances and may include the evidence seized in this case and the reports of the various law enforcement agents involved as well.

**III.**        **Summary of Testimony of Senior Fingerprint Specialist Michael M. Hall**

The Government intends to present the testimony of Michael Hall, who is employed as a Fingerprint Specialist by the Drug Enforcement Administration.

        A.        **The Witness's Opinions**:

Mr. Hall analyzed the drug packaging in this case. He will testify generally about the science, technology and procedures for fingerprint analysis, and about the results of his analysis in this case. We have produced his reports relating to his analysis in discovery. He will testify that he ran tests to check for the presence of latent fingerprints, using both the cyanoacrylate and R6G methods (glue fuming combined with the use of Rhodamine 6G dye). Specifically, he tested the packaging of the 1385 grams of powder MDMA seized from Edmonds, the packaging of 630.1 grams of powder MDMA seized from Cook, and the packaging of 21.9 grams of liquid LSD seized from Edmonds' residence, all of which revealed prints of Edmonds. He also tested the packaging of the 39.3 grams of liquid LSD seized from Cook, which revealed neither Edmonds' or Cook's fingerprints.

He also tested the packaging of the 28.8 grams of powder MDMA seized from Edmonds' residence, and the packaging of the N,N-dimethyltryptamine seized from Edmonds' residence, which revealed no latent prints suitable for identification. He will explain these findings, providing testimony regarding the nature of fingerprints, how fingerprints are left on surfaces, the nature of materials used in the packaging of the drugs, and the nature of how drugs are stored,

UNITED STATES' NOTICE OF EXPERT WITNESS
CR 10-0376 JSW        8

maintained, and carried.

**B.     The Witness's Qualifications**:

Mr. Hall has been employed as a Fingerprint Specialist with the DEA since 1992.  His duties include developing and identifying latent prints.  He prepares permanent records of prints developed through such photographic techniques as ultraviolet, infrared, and macro photography. he compares prints obtained through the above procedures to those of known individuals, and he determines if a match exists between any known and unknown prints.  He verifies identifications made by other fingerprint specialists.

He holds a Bachelors Degree in Administration of Justice and an Associate Degree in Administration of Justice/Political Science.  He has received extensive training related to crime scene investigation and latent print development and comparison.  He is an active member of the International Association for Identification, the Scientific Working Group for Imaging Technology, and Northern California Crime Scene Investigators.

**C.     The Bases and Reasons for the Witness's Opinions**:

The bases and reasons for Mr. Hall's opinions are his training, experience, and familiarity with all aspects of latent print examination.  He will also testify about the specific analyses performed on the items received in this case and the results obtained therefrom.